IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Reginald Capers,              )     Civil Action No.  8:13-cv-01046-RMG-JDA

             Plaintiff,    )

                              )

     vs.                       )     **REPORT AND RECOMMENDATION**

                              )     **OF MAGISTRATE JUDGE**

Carolyn W. Colvin,       )

Commissioner of Social Security,    )

                              )

            Defendant.    )

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1]  For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On January 25, 2010, Plaintiff filed both an application for DIB [R. 129–32] and SSI [R. 133–38] alleging an onset of disability date of January 14, 2010.  Plaintiff's claims were denied initially on April 8, 2010 [R. 85–90], and on reconsideration on September 21, 2010 [R. 92–97] by the Social Security Administration ("the Administration").  Plaintiff requested

---

[1]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

a hearing before an administrative law judge ("ALJ") and on January 25, 2012, ALJ Frances W. Williams conducted a de novo hearing on Plaintiff's claims. [R. 37–80.]

The ALJ issued a decision on March 19, 2013, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 17–36.] At Step 1,[2] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2013, and had not engaged in substantial gainful activity since his alleged onset date of January 14, 2010. [R. 22, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: residual effects of a right femur fracture, status post open reduction, internal fixation; and osteoarthritis of the bilateral knees. [R. 22, Finding 3.] The ALJ also determined Plaintiff had the following non-severe impairments: a history of left superior and inferior rami pubic fracture; retroperitoneal fibrosis; hypertension; lumbago; and sciatica. [*Id*. at 23.] Further, the ALJ found Plaintiff's depression and possible diagnosis of reflex sympathetic dystrophy syndrome ("RSDS") were not medically determinable impairments. [*Id*.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 23–24, Finding 4.] The ALJ specifically considered Listing 1.02 for major dysfunction of a joint and 1.06 for a fracture of the femur. [R. 24.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

for the following limitations: no lifting or carrying over 20 pounds occasionally and 5 pounds frequently; no standing and/or walking over two hours in an eight-hour workday, with the opportunity to stand at the work station after one to two hours; only occasional stooping or climbing of stairs or ramps; no twisting, kneeling, or climbing of ladders, ropes, or scaffolds; no crawling; and no right lower extremity controls.

[R. 24, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work.  [R. 30, Finding 6.]  Considering the Plaintiff's age, education, work experience, and residual functional capacity, however, the ALJ determined that there are jobs that existed in significant numbers in the national economy that the Plaintiff could perform.  [R. 30, Finding 10.]  Accordingly, the ALJ concluded Plaintiff had not been under a disability, as defined by the Act, from January 14, 2010, the alleged onset date, through the date of the decision.  [R. 31, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review.  [R. 1-7.]  Plaintiff filed this action for judicial review on April 18, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and claims the ALJ erred by

(1)    failing to find that Plaintiff's reflex sympathetic dystrophy syndrome ("RSDS") is a medically determinable impairment [Doc. 19 at 21–25];

(2)    failing to properly weigh the opinions of Dr. Alhatou, a treating physician [*id.* at 25–33];

(3)    failing to explain his findings regarding Plaintiff's residual functional capacity [*id*. 33–36];

(4)    accepting vocational expert testimony which contradicts the DOT without explanation [*id*. 36–39]; and,

3

(5)    failing to properly evaluate Plaintiff's credibility [*id*. 39–42].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ

(1)    reasonably determined that RSDS was not a medically determinable impairment [Doc. 22 at 11–15];

(2)    reasonably found Plaintiff had the RFC for certain light work and reasonably evaluated Dr. Alhatou's medical opinions and Mr. Blackwell's opinion [*id*. at 15–24];

(3)    reasonably considered Plaintiff's subjective complaints of pain and found they were not credible [*id*. at 24–27]; and,

(4)    reasonably found Plaintiff could perform other jobs existing in significant numbers in the national economy [*id*. at 28–29].

Accordingly, the Commissioner requests that the Court affirm the ALJ's decision. [*Id*. at 29.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is

4

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42

U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under

sentence four, the ALJ should review the case on a complete record, including any new

material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

may produce further evidence on remand.").  After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

      In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only
> upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C.

§ 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out

in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration

10

requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[4]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers

---

[4]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

primarily from an exertional impairment, without significant nonexertional factors.[6]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

---

[6] An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

12

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to

13

support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment

to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also* *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical

discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if

16

> available, should be obtained and considered.  Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485;

*see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of

pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria. *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor.  But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Medically Determinable Impairments**

Among several allegations of error, Plaintiff contends the ALJ erred by failing to recognize Plaintiff's RSDS as a medically determinable impairment.  The Court agrees because substantial evidence does not support the ALJ's decision at Step 2 to reject RSDS as one of Plaintiff's impairments.  Sections 216(i) and 1614(a)(3) of the Act define "disability" as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment (or combination of impairments) which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  If a medically determinable physical impairment exists, the ALJ is to consider whether the impairment prevents the Plaintiff from engaging in any substantial gainful activity for which he is qualified.  *Hill v. Celebrezze*, 233 F. Supp. 298, 301 (D.S.C. 1964).  Although the regulatory language speaks in terms of "severity," the plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  SSR 85–28.  If the Plaintiff does not have a medically determinable severe impairment, he is not disabled.  20 C.F.R. §§ 404.1520, 416.920.

### *Brief Medical History regarding RSDS*

On January 14, 2010, Plaintiff was doing some logging and was injured when a tree fell on him resulting in a right mid shaft femur fracture, as well as a left superior and inferior

18

rami pubic fracture. [R. 205, 207, 255.] A preexisting condition found on examination was retroperitoneal fibrosis. [R. 255.] Treatment notes post surgery, on February 9, 2010, show that Plaintiff complained of pain, foot burning, tingling in his right foot, and was still unable to bear weight on his right leg. [R. 254–55.] On February 11, 2010, Plaintiff was still in non-weight-bearing status and continued to complain of a burning sensation in his right toes and in his mid to right thigh region, as well as continued and worsening pain aggravated with range of motion and weight-bearing. [R. 258.]

On March 25, 2010, Dr. Rosenblum requested that Plaintiff be evaluated for CRPS[7] by neurology. [R. 253.] On May 26, 2010, Dr. Mohammed Alhatou ("Dr. Alhatou") of The Neurology and Pain Clinic saw Plaintiff on referral from Dr. McAlhany and Dr. Rosenblum with respect to pain in the thigh area which he described as shooting pain that goes to the ankle and burning and stinging pain in the right foot; at the time, Plaintiff was ambulating with crutches and presented with "down-going toes." [R. 295.] On July 15, 2010, Plaintiff saw Dr. Alhatou on follow up regarding knee pain due to ostheoarthritis, and the exam showed he had hyperesthesia.[8] [R. 294.] An RFC assessment completed on September 20, 2010, by Dr. Tom Brown found that Plaintiff's "alleged symptom of burning sensation, numbness and pain are fully credible as they are being treated with Rx." [R. 305.] On October 14, 2010, Plaintiff presented to Dr. Alhatou with complaints of swelling in his right foot, especially if he wore a shoe, and complaints of pain. [R. 322.] On examination on February 15, 2011, May 16, 2011, and August 15, 2011, Dr. Alhatou noted Plaintiff's

---

[7] CRPS is also known as RSDS as discussed below, *infra*.

[8] Hyperesthesia is when a non-painful stimulus such as a touch causes an exaggerated response. Dan J. Tennenhouse, ATTORNEYS MEDICAL DESKBOOK § 26:9 (4th ed. Supp. 2013).

continued complaints of pain and noted hyperesthesia in the right leg, no significant edema (or swelling), and right knee crepetation.  [R. 319–21.]  He also noted "no skin changes to suggest sympathetic dystrophy."  *Id.*  On November 16, 2011, December 15, 2011, and February 14, 2012, however, Dr. Alhatou noted Plaintiff's continued complaints of pain, hyperesthesia in the right leg, no significant edema and right knee crepetation, but also indicated the presence of "possible sympathetic reflux dystrophy without skin changes." [R. 337–38, 350.]  On April 10, 2012, Plaintiff presented to Dr.Alhatou with complaints of pain in the right leg, mostly in the right hip and gluteal area, and described tingling and numbness; again, Dr. Alhatou noted hyperesthesia and assessed possible sympathetic reflux dystrophy without skin changes.  [R. 351.]

### *ALJ's Consideration of Plaintiff's RSDS*

The ALJ determined that RSDS was not a medically determinable impairment to be considered in determining disability based on the following reasoning:

> The office visit notes from Dr. Alhatou also show a possible diagnosis for reflex sympathetic dystrophy syndrome (RSDS), without skin changes, given the claimant's complaints of right lower extremity and foot pain, with paresthesia symptoms, hyperesthesia about the thigh (Exhibit 15F).  SSR 03-02p explains that RSDS constitutes a medically determinable impairment only with appropriate documentation by medical signs, symptoms, and laboratory findings, including, specifically, persistent complaints of pain typically out of proportion to any documented precipitant with one or more of the following clinically documented signs in the affected region: swelling; autonomic instability such as changes in skin, sweating, or temperature; abnormal hair or nail growth; osteoporosis; or involuntary movements of the affected region. There is no evidence whatsoever of any of these signs; moreover, Dr. Alhatou admitted that the claimant had no skin changes, and his notes repeatedly show no significant swelling in the claimant's lower extremities (Exhibits 8F, 12F, and 15F). Thus, RSDS is not a medially determinable impairment.

[R. 23.]

### Discussion

RSDS is a condition of pain that may arise without a known history of trauma or may arise following mild or severe trauma, often produces poorly localized burning, freezing, or stabbing sensations, and it may be accompanied by sweating, decreased skin temperature, edema, or skin discoloration.[9]    According to SSR 03-2p[10], RSDS, also frequently known as Complex Regional Pain Syndrome, Type I (CRPS), "are terms used to describe a constellation of symptoms and signs that may occur following an injury to bone or soft tissue."  SSR 03-02p.  Also, according to SSR 03-02p,

> [a] diagnosis of RSDS/CRPS requires the presence of complaints of persistent, intense pain that results in impaired mobility of the affected region.  The complaints of pain are associated with:
>
> * Swelling;
>
> * Autonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), skin temperature changes, or abnormal pilomotor erection (gooseflesh);
>
> * Abnormal hair or nail growth (growth can be either too slow or too fast);
>
> * Osteoporosis; or
>
> * Involuntary movements of the affected region of the initial injury.

[Id.]

---

[9] Dan J. Tennenhouse, ATTORNEYS MEDICAL DESKBOOK § 26:8 (4th ed. Supp. 2013).

[10] SSR 03–2p provides guidance for evaluating claims of disability based on Reflex Sympathetic Dystrophy Syndrome (RSDS or RSD), also known as Complex Regional Pain Syndrome (CRPS).  See SSR 03–2p, 2003 WL 22399117 and 2003 WL 22814447.

> When longitudinal treatment records document persistent limiting pain in an area where one or more of these abnormal signs has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment.  It may be noted in the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another.  Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present.

[*Id.*]  Further, abnormal sympathetic stimulation "may produce changes" in skin, blood vessels, musculature, and bone. [*Id.*]

In this case, longitudinal treatment records establish that Plaintiff complained of "persistent limiting pain" in his right leg and ankle with burning and stinging pain in his right foot. [*See, e.g.*, R. 254–55, 294–95.]   Plaintiff also presented to Dr. Alhatou with complaints of swelling in his right foot especially if he wore a shoe.  [R. 322.]   Dr. Alhatou advised Plaintiff to use a TED stocking on the right to avoid swelling. [*Id.*]  Dr. McAlhaney, on completing a physical capacities evaluation form, indicated that Plaintiff's legs should be elevated with prolonged sitting. [R. 336.]  Additionally, Dr. Alhatou assessed Plaintiff with "possible sympathetic reflux dystrophy without skin changes."  [R. 351.]  The ALJ rejected RSDS as a medically determinable impairment because "Dr. Alhatou admitted that the claimant had no skin changes, and his notes repeatedly show no significant swelling in the claimant's lower extremities."   However, the fact that Plaintiff experienced no skin changes does not appear to be dispositive of whether Plaintiff suffered from RSDS in light of the fact that Dr. Alhatou found the diagnosis "possible" even without skin changes.  As the SSR 03-2p explains, RSDS *may produce* changes in skin; thus, Dr. Alhatou's determination that RSDS may be present without skin changes is consistent with the Social

22

Security Ruling.  Additionally, Dr. Alhatou's notes indicate that, at least on one occasion, Plaintiff complained of swelling of his right foot when he wore shoes.

At Step 2, the ALJ has the responsibility to determine which impairments a plaintiff has and whether the impairments are severe or non-severe.  *See Solesbee v. Astrue*, C/A No. 2:10-1882-RMG, 2011 WL 5101531, at *4–5 (D.S.C. Oct. 25, 2011) (finding error when the ALJ did not address at Step 2 a diagnosis of Panic Disorder With Agoraphobia and its potential impact on the plaintiff's ability to perform work).  The ALJ's determination of whether or not an impairment is severe[11] is a threshold determination.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  However, "this is not a difficult hurdle for the claimant to clear." *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir.1999).  Here, the ALJ erroneously found that RSDS was not one of Plaintiff's impairments because there was no evidence whatsoever of any sign of swelling even though Dr. Alhatou reported that Plaintiff may have had swelling.  Additionally, Dr. Alhatou several times noted that Plaintiff may have RSDS.  Thus, substantial evidence does not support the ALJ's rejection of RSDS at Step 2.

Moreover, upon review of the medical evidence of record, the Court must conclude that, in finding that RSDS was not a medically determinable impairment, the ALJ erroneously exercised an expertise in the field of neurology he did not possess. *See, e.g., Wilson v. Heckler*, 743 F.2d 218 (4th Cir.1984).  He simply rejected Dr. Alhatou's finding

---

[11]An impairment is not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) (internal citation and quotation omitted) (emphasis in original); *see also Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir.1999); 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

of possible RSDS without conflicting findings from a medical professional.  If the ALJ was in doubt regarding the validity of Plaintiff's possible RSDS impairment, "he should have sought clarification . . . or ordered additional testing.  Because of the Commissioner's duty to develop the medical record fully and fairly 'it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.' " *Berryman v. Massanari*, 170 F. Supp. 2d 1180, 1185 (N.D.Ala. 2001) (*quoting Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir.1988) (*quoting Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir.1984)) (internal quotation marks omitted)).

Because the ALJ failed to recognize Plaintiff's RSDS as a medically determinable impairment, this impairment was not considered at Step 2, either singly or in combination with Plaintiff's other severe impairments.  This is reversible error, and finding error in the ALJ's Step 2 analysis necessarily requires the ALJ to revisit the subsequent steps of the analysis.  *See Prioleau v. Astrue*, C/A No. 2:11-2115-MGL, 2013 WL 655712, at *4 (D.S.C. Feb. 22, 2013); *Solesbee v. Astrue*, C/A No. 2:10-1882-RMG, 2011 WL 5101531, at *4–5 (D.S.C. Oct. 25, 2011).

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly consider Plaintiff's possible RSDS diagnosis as a medically determinable impairment at Step 2 is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

24

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.


May 27, 2014                                    s/ Jacquelyn D. Austin
Greenville, South Carolina                     United States Magistrate Judge